**Louis Gilbert DuBUIT et al., Appellants,**

v.

**HARWELL ENTERPRISES, INC., and Roy M. Harwell, Jr., Appellees.**

**No. 75–1470.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 14, 1975.

Decided May 17, 1976.

---

zer, Park & Gibson, Charlotte, N. C., on brief), for appellants.

Jack E. Dominik, Chicago, Ill. (Basil L. Whitener, Gastonia, N. C., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, RUSSELL, Circuit Judge, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

On December 15, 1972, Louis G. DuBuit filed an appeal from a final judgment order which had been entered in this case. The appeal was argued in this court on June 4, 1973, and an opinion and judgment of affirmance was filed on October 15, 1973.[1] Approximately one year later, on November 5, 1974, the district court entered an order in which it found this case to be "exceptional" under 35 U.S.C. § 285, and directed DuBuit and his co-plaintiffs to pay to the defendants counsel fees and expenses totaling approximately $35,000.00. The plaintiffs have appealed and we reverse.

The background and procedural history of this controversy is as follows. Louis G. DuBuit, a citizen and resident of France, is the owner of United States Patent No. 2,090,300 entitled "Silk Screen Printing Machine" which was issued to him on May 21, 1963. Machines DuBuit is a company organized under the laws of France, having its principal place of business in that country, and manufactures the machines covered by the DuBuit patent. American Screen Process Equipment Company (American) is the exclusive distributor of the subject machines in the United States. Harwell Enterprises, Inc., is a North Carolina corporation with its principal office in that state, and Roy M. Harwell, Jr., the principal stockholder and executive officer of Harwell Enterprises, Inc., is a citizen and resident of North Carolina.

In August of 1969, Louis G. DuBuit, Machines DuBuit and American instituted this action against Harwell Enterprises, Inc.,

Robert E. Wagner, Chicago, Ill. (Robert E. Browne, Stone, Wagner & Aubel, Chicago, Ill., Floyd A. Gibson, Parrott, Bell, Selt-

1. *DuBuit v. Harwell Enterprises*, 486 F.2d 131 (4 Cir. 1973).

and Roy M. Harwell, Jr., the complaint being drafted in four counts. The first count charged the defendants with infringement of the DuBuit patent. In the second count, which was based on diversity jurisdiction, Louis G. DuBuit charged the defendants with libel, and in the third count he charged them with slander. In the fourth count, which was also based upon diversity jurisdiction, American and Machines DuBuit charged the defendants with unfair competition and disparagement of products.

The parties engaged in extensive discovery, and thereafter the district court summarily adjudged that an agreement between Machines DuBuit and American contained a tying arrangement which constituted patent misuse, and reserved for submission to the jury at trial the issue of whether the plaintiffs had purged such misuse. At trial the court directed a verdict for the defendants on the unfair competition and slander counts of the complaint and in favor of DuBuit Machines and American on a counterclaim which had been filed against them by the defendants charging unfair competition and violations of the antitrust laws. The issues of validity, infringement, purge of misuse and libel were submitted to the jury which, in answer to specific interrogatories, found the patent to be valid but not infringed, and the misuse not purged. It further found that DuBuit had not been libeled by the defendants.

A final judgment order was entered by the district court on October 26, 1972, which order, after reciting the findings of the jury, specifically disposed of all of the issues raised by the complaint as well as the defendants' counterclaim. On November 2, 1972, the defendants filed a motion for attorney fees, stating that it was based upon 35 U.S.C. § 285 or, in the alternative 15 U.S.C. § 14 for a per se violation of the Clayton Act. On the same date, the defendants filed a motion for amendment of the judgment order pursuant to Rule 59(e), Federal Rules of Civil Procedure. A motion pursuant to Rule 59(e) was also filed by the

plaintiffs on November 3, 1972, seeking amendment of the judgment order in several respects.

The district court did not act upon the motion for attorneys fees but entered an order on November 30, 1972, in which it denied the defendants' motion to amend the judgment order and granted the plaintiffs' amendatory motion in certain limited respects. On December 15, 1972, Louis G. DuBuit filed a notice of appeal with respect to all of the issues which had been resolved against him. American and Machines DuBuit did not appeal, nor did the defendants appeal from those portions of the judgment which were adverse to them, i. e., the finding that the DuBuit patent was valid and the denial of their counterclaim. The mandate of this court was filed in the district court on December 27, 1973, and on March 22, 1974, counsel for the defendants filed a paper entitled "Supplemental Affidavit in Support of Renewed Motion for Attorneys Fees and Expenses." The plaintiffs filed a motion to strike, challenging the jurisdiction of the district court to entertain the motion. In entering its order of November 5, 1974, however, the district court concluded that it had the requisite jurisdiction, and awarded the fees and costs requested by the defendants.

■ Unquestionably, the record demonstrates that the district court had no jurisdiction over either Machines DuBuit or American which would support the award of fees and costs against them. As we have stated, the final order of the court disposed of all of the issues between these two plaintiffs and the defendants, and since no appeals were taken the judgment became a finality and terminated the case as to them. Under these circumstances, the case could only be reopened or the order revised under the provisions of Rule 59 or Rule 60, Federal Rules of Civil Procedure, neither of which was invoked as the basis of the court's order. It is equally clear that the district court had no authority to enter the order for fees and costs against Louis G. DuBuit since his appeal divested the trial

court of further jurisdiction over him. The controlling rule is stated in Professor Moore's treatise:

"The filing of a timely and sufficient notice of appeal has the effect of immediately transferring jurisdiction from the district court to the court of appeals with respect to any matters involved in the appeal. It divests the district court of authority to proceed further with respect to such matters, except in aid of the appeal, or to correct clerical mistakes * * * until the district court receives the mandate of the court of appeals." 9 Moore's Federal Practice ¶ 203.11.

Further jurisdiction of the district court, if any, was dependent upon the terms of the appellate mandate, and when we affirmed the final judgment this put an end to the litigation and the district court had no authority to reopen the case for the consideration of attorney fees or any other purpose. *Durant v. Essex Company*, 101 U.S. 555, 25 L.Ed. 961 (1879). In doing so "the District Judge violated the principle that a lower court has no power or authority to deviate from the mandate issued by an appellate court but is bound thereby and cannot reopen questions which the mandate lays to rest, *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403." *United States v. Cato Brothers, Inc.*, 273 F.2d 153, 157 (4 Cir. 1959).

■ In entering the order, the district judge conceded that there had been no express reservation of jurisdiction but concluded that he had authority to act in the premises since "the question had been presented by motion before the appeal had been perfected and was, in fact, deferred pending outcome of the appeal." Whether jurisdiction of such a motion could be effectively reserved by a district court pending

appeal by the specific language of a judgment order is highly questionable[2], but in any event there was nothing in any of the orders or otherwise in the record in the present case to support the district court's exercise of jurisdiction. While it is true that the defendants' motion was filed shortly after the judgment order had been entered, nevertheless, as we have pointed out, the order entered on November 30, 1972, made no mention whatever of the motion for fees and costs. Under these circumstances, we cannot accept the defendants' contention that the jurisdiction of the court could be preserved by correspondence or statements dehors the official record in this case. Additionally, the issue of attorney fees should have been considered and disposed of either prior to or at the time of the entry of final judgment in this case and not left open pending the outcome of the appeal.[3] In our opinion, the correct jurisdictional principles were recognized and applied in this circuit by the district court in *Davis Harvester Company v. Long Manufacturing Company*, 283 F.Supp. 536 (E.D. N.C.1967).

In addition to the jurisdictional question, we think it was inappropriate to award attorney fees in this case under 35 U.S.C. § 285. The statute provides:

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."

This section, which was enacted in 1952, substantially adopted the language of the repealed 35 U.S.C. § 70, but the phrase "exceptional cases" was substituted for the words "in its [the court's] discretion" which appeared in the old statute. This change was explained by the revisors "as expressing the intention of the present statute as shown by its legislative history and as inter-

---

2. *See Laufenberg, Inc. v. Goldblatt Bros.*, 7 Cir., 187 F.2d 823, 825.

3. In *Laufenberg, Inc. v. Goldblatt Bros.*, supra, n. 2, the court quoted with approval the following observation of the district judge in that case:

"'I think it would be very bad practice if it is established in patent suits that the parties

may litigate the question of infringement and validity through all the courts, and then after that is over, start in and litigate again on the question of whether the one or the other of the parties are entitled to attorney's fees, and if so, how much. I think that would be a very bad practice. I am not willing to start it.'" 187 F.2d at 824.

preted by the courts."[4] The legislative history of Section 285 as well as the predecessor statute[5] indicates that Congress intended that the authority be used sparingly since it represents a departure from the usual rule in this country that counsel fees are not awardable to the prevailing party in an action at law. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). It was never intended to permit recovery of fees routinely in such cases, but rather such an allowance "should be based upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of equal force, which makes it grossly unjust that the prevailing party be left to bear the burden of his own counsel fees." *Purer & Company v. Aktiebolaget Addo,* 410 F.2d 871, 880 (9 Cir. 1969). "[E]xceptional circumstances have been interpreted as incorporating concepts of fraud, malice, bad faith and other similar concepts," *Hoge Warren Zimmerman Co. v. Nourse & Co.,* 293 F.2d 779, 784 (6 Cir. 1961). In our own court we have stated:

"While the allowance of reasonable counsel fees to the defendant in a patent case is within the discretion of the District Court  *  *  *  we have held that the discretion should not be exercised except in situations involving vexatious and unjustified litigation."

*American Chain & Cable Co. v. Rochester Ropes,* 199 F.2d 325, 330 (4 Cir. 1952). *See also: Carolina Lee Knitting Company v. Johnson & Johnson,* 275 F.2d 91, 94 (4 Cir. 1960).

■ In summarizing what it considered to be the exceptional circumstances in the present case, the district court referred to the patent misuse which the jury found had not been purged; the failure to fully respond to an interrogatory in regard to certain foreign patents; and what the court characterized as "little, if any, merit on the fundamental claim of infringement." The charge of patent misuse, however, does not establish that the plaintiffs' suit was brought in bad faith. *Larchmont Engineering, Inc. v. Toggenburg Ski Center, Inc.,* 444 F.2d 490 (2 Cir. 1971), especially since the trial court saw fit to submit to the jury the issue of whether such misuse had been purged.[6] On the other two issues which were submitted to the jury, while DuBuit lost on the charge of infringement, he prevailed upon the issue of validity. The existence of the foreign patent applications was fully disclosed to the jury, and its finding of validity indicates that DuBuit's lack of candor, if any,[7] in answering the interrogatory relative to these foreign patents had no bearing upon the outcome of this litigation.

■ All in all, our examination of the record persuades us that this is not an exceptional case in which a party seeking to protect his patent should be compelled to absorb the expense of attorneys' fees incurred by his adversaries.

■ Finally, we note that the district court made no attempt to distinguish between that portion of the fees attributable to the patent claims and those attributable to the non-patent issues in this litigation. The authority to award such fees under Section 285 is limited to the patent side of the case, and where the action embraces both patent and non-patent claims, no award of fees can be allowed under Section 285 which have been incurred in the litigation of the non-patent issues. *See Monolith*

---

4. U.S. Code Congressional and Administrative News 1952, p. 2423.

5. A thorough review of the legislative history and collation of the authorities is contained in Judge Northrop's opinion in *Kaehni v. Diffraction Company,* 342 F.Supp. 523 (D.Md.1972), aff'd, 473 F.2d 908 (4 Cir. 1973).

6. Upon the former appeal we noted that the subsidiary issues pertaining to patent misuse and the measures taken to purge it had been mooted by the judgment of non-infringement. *DuBuit v. Harwell Enterprises,* 486 F.2d 131, n. 1 (4 Cir. 1973).

7. The insufficiency of DuBuit's original answer may have resulted from the fact that it was necessary to translate the subject interrogatory from English to French and back to English again. The record discloses that DuBuit voluntarily supplemented his answer after he noted his mistake and prior to any cross-examination.

*Portland Midwest Co. v. Kaiser Aluminum & C. Corp.,* 407 F.2d 288, 297 (9 Cir. 1969).

For the foregoing reasons the order of the district court will be reversed.

*REVERSED.*